## GROB PLATING CO v KENT-OWENS MACHINE CO

Ohio Appeals, 6th Dist, Lucas Co

Decided Feb. 2, 1931.

Fraser, Hiett, Wall & Effler, Toledo, for Plating Co.

Geddes, Schmettau, Williams, Eversman & Morgan, Toledo, for Machine Co.

LEMERT, SHERICK and MONTGOMERY, (5th Dist) sitting.

LEMERT, J.

In brief, the plaintiff's claim, which is denied by defendant, is that the plaintiff disclosed some new and novel ideas in grinding, polishing and buffing machines, to the defendant; that the defendant agreed it was not to use any of the ideas disclosed to it by the plaintiff, and that the defendant had breached its obligation by manufacturing one machine and proposing to manufacture other machines in violation of its obligation to the plaintiff. So that, with the issue thus made, there presents for our consideration three issues of fact and law which must be proven by a preponderance of the evidence on the part of the plaintiff in order that it might prevail in this action.

First: That it disclosed new ideas to defendant.

Second: That the defendant was obligated not to use any ideas disclosed to it by the plaintiff.

Third: That the defendant had used and was threatening to use these new and novel ideas disclosed to it by the plaintiff.

So that, if the plaintiff fails to show by clear and convincing evidence any of these three elements, it must fail in this action.

The first proposition presented by counsel in oral argument and in brief is the claim made by the plaintiff that the machine in question was to be manufactured secretly. We find from a careful examination of the record that in the manufacture of this machine the Kent-Owens Company proceeded in the usual and ordinary way, and the record seems to indicate that the work done was by them considered an ordinary job, involving nothing unusual and calling for no special handling. While the machine was being manufactured by Kent-Owens, the plaintiff and one Mr. Hyman visited the Kent-Owens factory many times, through interest in the machine, and also to discuss questions which naturally arose in the course of manufacturing. This was especially true when the machine was being assembled. The machine was completed in the late spring or early summer of 1926, but was not delivered at that time because of plaintiff's failure to pay for it. After the completion of the machine, the record shows that the machine stood in the Grob plant until the spring of 1929, or approximately two years and four months after it was removed by Grob on his premises and after it had stood in the factory of defendant for about six months after its completion. So that the period of nearly three years elapsed without having any electrical wiring hooked up with it, and without any attempt whatever to use it. The machine had not been run, even for test purposes, in the Kent-Owens factory, for the reason that the Kent-Owens factory did not have the right current for the motors. A great part of the briefs are taken up with questions dealing with infringements, patents, the law relating to trade secrets applicable as between master and servant and between employer and employee, all of which we do not consider of any great consequence as aiding this court in the proper decision and determination of the issues before us in the instant case.

Whether the machine in question, or any or all of its parts, were patented or not, is

not governing. The record discloses that after certain negotiations had occurred between plaintiff and defendant company, that the plaintiff Grob placed an order with Kent-Owens for one polishing machine. This order being identified, really, as two orders, as shown by exhibits Nos. 4 and 5 in the record.

Exhibit No. 4 reads:

"Please enter our order as follows: To build one polishing machine as per blueprints furnished you, the price for same to be $3,425. The price includes all labor and material, with the exception of motors and electrical equipment. Delivery to be made not later than approximately six weeks from date of order. Terms to be net 10th of month following date of shipment."

Exhibit No. 5 reads:

"Please enter order as follows: To make pattern for seven-wheeled polishing machine as per blueprints furnished. The price $260. The patterns to be the property of the Grob Plating Company. Terms to be net 10th of month following date of shipment."

Both these orders were signed: "The Grob Plating Company."

Reverting to the first proposition as being one of the main issues in the case, the question is raised: What new ideas are claimed by the plaintiff, that were disclosed to the defendant? What had plaintiff invented, and what secrets, if any, did he possess? What was there that the defendant company could misappropriate or wrongfully use?

Obviously, if the plaintiff herein has failed to show that any new or novel ideas were disclosed, its entire case fails. And the burden of so doing is upon the plaintiff.

In a careful examination of Grob's testimony, together with that of the patent attorney, Mr. Kirk, and particularly the cross-examination of these two witnesses, it is quite noticeable that they failed to specifically point out anything in the Grob machine that was new. They point out different items and different parts, but a comparison with the parts of the Mather machine does not prove that the ideas complained of by Grob were new or that the Mather machine was a copy of the Grob machine.

Referring to the orders, or exhibits Nos. 4 and 5, we find that they speak for themselves, and there is not included therein any terms or stipulations, and no agreement either express or implied, that Kent-Owens would not disclose or use ideas embodied in the Grob machine. We are not unmindful of the law in this state and other jurisdictions pertaining to the protection that may be afforded as between employer and employee, but we are mindful of the fact, and it must be noted, that the defendant company was not an employe of the Grob company. Kent-Owens undertook to fill a written order given by Mr. Grob to manufacture a machine according to blueprints furnished by Mr. Grob. This relationship in no way resembles that of employer and employe, which is the relationship considered in all the decisions dealing with an implied contract. Considerable time and space, in briefs of counsel for plaintiff, has been given to the question of secrecy. We do not believe that the same was a material issue in the instant case, but if it were, the record before us shows that the plaintiff would fail on such an issue to carry the burden of proof necessary in such case.

On the question as to whether or not Kent-Owens used any new ideas disclosed by Mr. Grob, we find from the record that similar machines to the Grob machine were manufactured and in use back as far as 1889.

Keeping in mind that the plaintiff herein, as in the court below, is and was seeking injunctive relief, such relief cannot be granted unless the plaintiff has carried the burden of proof, and has established by clear and convincing evidence that the wrongs alleged have been committed and that irreparable injury will be done plaintiff if an injunction is not granted.

A few brief authorities on this question:

Lawrence on Equity Jurisprudence, Vol. 2, page 1189:

"All facts necessary to warrant the issuance of an injunction should be established by clear and convincing evidence and the necessity for its employment should be clearly apparent."

40 A. L. R., 1313:

"One who seeks the extraordinary remedy of injunction must establish by competent evidence every controverted fact necessary to enable the party to the relief to be granted."

43 Oh St, 526, 536:

"For a perpetual injunction, the courts require that there should be no doubt in the case and that plaintiff must make it a clear and unexceptional right. Courts will

not exercise this necessary authority when the right is doubtful or the facts not definitely ascertained."

The case decided in 43 Oh St, was recognized in a clear and concise opinion by the Court of Appeals, in 24 **Oh Ap**, 294, 308.

In 32 Corpus Juris, 350:

"It has been variously stated in the decisions that in order to authorize the issuance of an injunction, the right thereto must be established with certainty, that the evidence must be clear and convincing, clear and satisfactory, that the right must be supported by the clearest proof, that a clear and unexceptionable right to an injunction must be shown."

So that, where the foregoing rule was applied and it was held that it was not possible for the courts to grant an injunction, for the reason that the plaintiff had not proved its case in such manner that a definite order should be framed advising the defendant exactly what it could or could not manufacture. We find from an examination of the record in this case that even opposing counsel have been unable, or at least have failed, to suggest that sort of an order the court could or should issue.

In the case of **The National Tube Co. v Eastern Tube Co.**, 3 Oh C. C. (N.S.), 459, as cited in plaintiff's brief, there is an interesting discussion of facts applicable to the instant case, wherein among other things, it was held:

"If the employe himself knew the thing, if he is the one who brought the knowledge to the employer, the only property interest that the employer can claim is the interest of his skill or industry and the intelligence of the workman; that is, he owns the pattern but does not own the idea. Therefore, if these mill owners desire to cripple the man's enterprise and his energy and intelligence, to hamper him in the future employment by requiring that he shall not give to that future employer the benefit of his skill or the things that he has developed for the former master, they must contract to that effect. Nothing but a specialty would control the natural rule of right in that sort of a cause."

So that, when we consider the relationship that existed between Grob and the Kent-Owens company, what law then should govern? Kent-Owens was not an employe, but undertook upon order of Grob to manufacture a machine for Grob. This being a case where one corporation undertook to do some work for another corporation as an independent contractor, the relationship of master and servant did not exist. None of the cases cited by plaintiff and hereinbefore discussed is in point for the reason that all of them grow out of and deal with the relationship of employer and employe or master and servant and the duties incident to that relationship.

The Supreme Court of Massachusetts has well recognized the usual rule governing the duty of an employe not to reveal the secrets of the employer, and again that same court, in King v Gannon, defined the relationship which existed between the Grob Plating Company and the Kent-Owens Company, and we believe has well defined the law governing it. The court, in deciding King v Gannon, recognized the doctrine of Peabody v Norfolk, and distinguished it when employing the doctrine to a relationship similar to the instant case. So that, the result is that King v Gannon, decided by the Supreme Court of Massachusetts, stands today as the law defining the relationship out of which the present litigation grew, and also defines the duties and obligations incident to that relationship.

The case of King v Gannon, 54 A. L. R., at page 1215, wherein it holds that a custom in the machine shop business, that a person building an experimental or special machine designed for certain purposes, which is not to be marketed, shall not make a similar one for a different customer, and to use the knowledge gained in the building of such machine, is unreasonable and not binding, holding that the policy of the law is not to countenance contracts by which a person endeavors to restrain himself from doing productive work at any time which is useful to the community and remunerative to himself. Again, that the mere fact that a machine designed by one person for a special purpose is built in the shop of a third person, does not establish such confidential relations between the owner and builder as to prevent the latter from making use of the knowledge gained of the basic and underlying principle, to build a machine for a stranger. It is to be noted, in King v Gannon, that the facts as found therein by the master are parallel to the facts shown by the record before us in the instant case, wherein the Supreme Court of Massachusetts held that a person building either an experimental machine or a special machine designed for certain purposes, which machine is not to be marketed, should not make another similar machine for a different customer, nor use the knowledge gained

in the building of such machine, is a custom valid in law. The custom or usage invoked in the instant case to establish an implied contract between plaintiff Grob and the defendant company, which is asserted to have arisen from the fact that the defendant company built a machine for plaintiff, the same being a special machine not to be marketed, from plans and drawings made by plaintiff, is one that leads to burdens upon the machinist which he should not be held to have undertaken without an express contract so to do. Under such a custom the individual machinist, without limit of time or space, is restrained and restricted in the pursuit of his trade, to work which shall not produce a machine that in its fundamental principles infringes a machine he has built at some previous time for an inventor or from designs of that sort of a machine. The protection afforded by the alleged custom to an inventor or a secret machine not patented, would not be reasonably necessary to inventors of machines, or one to be approved by the court where the effect of its enforcement is to restrain an individual machinist in the doing of work useful to the community and to deprive him of means of obtaining a livelihood, but does not restrain machinists at large in their legal right to build such special machine for any person from any plans or designs which are lawfully obtained. The policy of the law is not to countenance contracts by which a person endeavors to restrain himself from doing productive work at any time which is useful to the community and remunerative to himself.

Therefore, the result is that such an alleged custom is unreasonable, and therefore not enforceable as against the defendant company, as an implied part of the contract with plaintiff. The facts in the instant case before us do not warrant the contention of the plaintiff that there was such a confidential relationship between Grob and the defendant company as imposed upon the defendant company a duty not to make use of the knowledge of the basic and underlying principle of the invention of Grob which the defendant company acquired in building the machine. So that, from the record before us, we find that the plaintiff has not carried the burden of proof necessary in such cases and has not shown by a preponderance of the evidence, as is necessary in such cases, to enable it to prevail, so that the same judgment will be entered in this court as was entered in the court below—that is, a decree for the defendant.

Exceptions may be noted.

SHERICK and MONTGOMERY, JJ, concur.